# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE DRISKELL,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>    Defendant. | Case No. EDCV 16-2534-KK<br><br>MEMORANDUM AND ORDER |

Plaintiff Julie Driskell ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her application for Title II Disability Insurance Benefits ("DIB"). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

## I.
## **PROCEDURAL HISTORY**

On January 25, 2013, Plaintiff filed an application for DIB, alleging a disability onset date of September 28, 2012. Administrative Record ("AR") at

---

[1] The Court substitutes Nancy A. Berryhill, the current Acting Commissioner of Social Security, as Defendant in this action. Fed. R. Civ. P. 25(d).

168-69. Plaintiff's application was denied initially on August 1, 2013, and upon reconsideration on December 24, 2013. Id. at 84, 102. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 119.

On May 12, 2015, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ. Id. at 43-59. A vocational expert ("VE") also testified at the hearing. Id. at 60-64. On November 18, 2015, the ALJ issued a decision denying Plaintiff's application for DIB. Id. at 10-27.

On November 25, 2015, Plaintiff filed a request to the Agency's Appeals Council to review the ALJ's decision. Id. at 7-9. On November 18, 2016, the Appeals Council denied Plaintiff's request for review. Id. at 1-6.

On December 8, 2016, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1, Compl. This matter is before the Court on the Parties' Joint Stipulation ("JS"), filed on August 3, 2017. Dkt. 19, JS.

## II.
## PLAINTIFF'S BACKGROUND

Plaintiff was born on November 25, 1974, and her alleged disability onset date is September 28, 2012. AR at 45, 168. She was thirty-eight years old on the alleged disability onset date and forty years old at the time of the hearing before the ALJ. Id. at 45. Plaintiff has an associate degree and was a licensed vocational nurse. Id. at 45-46. Plaintiff alleges disability based on fibromyalgia, chronic pain and fatigue, nerve pain, blood clots, stress, back disc stenosis, venous thromboembolic disease, post-thrombotic scarring of lower extremities, edema, hypothyroidism, depression, and severe insomnia. Id. at 45, 85-86.

## III.
## STANDARD FOR EVALUATING DISABILITY

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a

continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[2]
4. Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.
5. Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the

---

[2] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## THE ALJ'S DECISION

**A.  STEP ONE**

At step one, the ALJ found Plaintiff has not engaged "in substantial gainful activity since September 28, 2012, the alleged onset date." AR at 15.

**B.  STEP TWO**

At step two, the ALJ found Plaintiff "ha[d] the following severe impairments: fibromyalgia, disc disease of the lumbar spine, history of deep vein thrombosis in the bilateral legs, history of left breast cancer status post bilateral mastectomy in April 2012, and adjustment disorder." Id. at 15.

**C.  STEP THREE**

At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id. at 16.

**D.  RFC DETERMINATION**

The ALJ found Plaintiff had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except: [Plaintiff] can lift and/or carry twenty pounds occasionally, ten pounds frequently; [Plaintiff] can stand or walk for four hours out of an eight-hour workday; [Plaintiff] can sit for six hours out of an eight-hour workday; [Plaintiff] can frequently perform postural activities; [Plaintiff] must avoid all exposure to hazards; [Plaintiff] is limited to

simple, repetitive tasks; [Plaintiff] can have no more than occasional
contact with coworkers and the public.

Id. at 17.

**E.     STEP FOUR**

At step four, the ALJ found Plaintiff is "unable to perform any past relevant work." Id. at 25.

**F.     STEP FIVE**

At step five, the ALJ found "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Id. at 26.

**V.**

**PLAINTIFF'S CLAIMS**

Plaintiff presents one disputed issue: Whether the ALJ improperly rejected Plaintiff's testimony regarding her pain and limitations.

**VI.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720 (citation omitted); see also Hill v. Astrue, 698 F.3d 1153,

1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a 'specific quantum of supporting evidence'") (citation omitted). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21; <u>see also</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." <u>Robbins</u>, 466 F.3d at 885 (citation omitted).

## VII.

## **DISCUSSION**

### **THE ALJ ERRONEOUSLY REJECTED PLAINTIFF'S SUBJECTIVE COMPLAINTS OF IMPAIRMENT**

**A. RELEVANT FACTS**

**(1) Plaintiff's Testimony Regarding Her Impairments**

Plaintiff testified she could not maintain full-time work because of fibromyalgia pain, insomnia, pain in her back and lower extremities, and blood clots. AR at 47-48. She testified she suffers from depression constantly and anxiety intermittently. <u>Id.</u> at 53. She stated she takes four types of medications for pain, in addition to medications for blood clots, polycystic ovarian disease, insomnia, swelling, hypothyroidism, and acid reflux. <u>Id.</u> at 50. She testified she can lift five to eight pounds, sit for fifteen to thirty minutes, and be on her feet for five to fifteen minutes. <u>Id.</u> at 52-53.

Plaintiff testified she can go out in public, but prefers to go places where she knows she can sit if her back hurts. Id. at 54. She can go grocery shopping "on a good day," but uses an electric cart. Id. at 54, 56. She can drive her husband a short distance to work, cook basic meals two to three times a week, and do light household chores with breaks. Id. at 55- 58. Plaintiff explained she "shied away from friends and family," but maintains contact on the phone. Id. at 54, 56. She is not able to spend long periods on the computer. Id. at 56. Plaintiff additionally testified that she takes naps in the morning and afternoon. Id. at 55-57.

Plaintiff estimated she has two to three "good days" a week, when she is able to perform the daily activities discussed above. Id. at 58. She has one to two "bad days" a week, when she is unable to get out of bed. Id. at 59. The remaining days of the week she is only able to perform "a couple" of the daily activities discussed above. Id.

### (2) The ALJ's Adverse Credibility Finding

The ALJ detailed Plaintiff's medical history, as well as her hearing testimony and function questionnaires. Id. at 18-19, 21-25. The ALJ then found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent those statements are inconsistent with the residual functional capacity assessment herein." Id. at 20-21. The ALJ cited the following three reasons for rejecting Plaintiff's subjective complaints of impairment: (1) Plaintiff's allegations are not supported by objective medical evidence, (2) Plaintiff's daily activities are inconsistent with a finding of disability, and (3) the level of medical treatment Plaintiff received was inconsistent with disabling impairments. Id. at 19-20, 25.

///

///

///

**B.    APPLICABLE LAW**

If "the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect." Robbins v. Social Security Administration, 466 F.3d 880, 883 (2006) (citations omitted).[3]

The ALJ is required to engage in a two-step analysis. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citations and internal quotation marks omitted). "If the claimant has presented such evidence,

---

[3] On March 28, 2016, after the ALJ's assessment in this case, SSR 16–3p went into effect. See SSR 16–3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16–3p supersedes SSR 96–7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16–3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Id. at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The ALJ's November 18, 2015 decision was issued before March 28, 2016, when SSR 16–3p became effective, and there is no binding precedent interpreting this new ruling including whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16–3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16–3p retroactively to a 2013 ALJ decision); see also Smolen v. Chater, 80 F.3d 1273, 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993) (holding that because regulations were intended to incorporate prior Social Security Administration policy, they should be applied retroactively)). Here, SSR 16–3p on its face states that it is intended only to "clarify" the existing regulations. However, because the ALJ's findings regarding this issue fail to pass muster irrespective of which standard governs, the Court need not resolve the retroactivity issue. Notwithstanding the foregoing, SSR 16–3p shall apply on remand.

8

and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." Id. (citations and internal quotation marks omitted). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) (holding "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination").

"If the ALJ's credibility finding is supported by substantial evidence, [a court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, an ALJ's failure to give specific, clear, and convincing reasons to reject the claimant's testimony regarding the severity of the symptoms is not harmless, because it precludes the Court from conducting a meaningful review of the ALJ's reasoning. Brown-Hunter, 806 F.3d at 489.

The ALJ's credibility determination must be supported by "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks omitted). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991). As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam). In other words, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen, 80 F.3d at 1284.

///

///

## C. ANALYSIS

After finding Plaintiff suffered from "medically determinable impairments [that] could reasonably be expected to cause the alleged symptoms," and in the absence of any indication of malingering, the ALJ was required to offer specific, clear, and convincing reasons for rejecting Plaintiff's subjective complaints of impairment. Id. at 20; Molina, 674 F.3d at 1112. As set forth below, the ALJ failed to provide such reasons.

### (1) Daily Activities

First, the ALJ concluded, "[a]lthough [Plaintiff's] activities of daily living were somewhat limited, some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition." AR at 19. Specifically, the ALJ relied on Plaintiff's ability to perform personal grooming activities with occasional assistance, prepare simple meals, perform some household chores, drive a vehicle, shop, and spend time with others. Id.

Daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of h[er] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (holding adverse credibility finding based on daily activities may be proper "if a claimant engaged in numerous daily activities involving skills that could be transferred to the workplace"). However, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). "[D]isability claimants should not be penalized for attempting to lead normal lives

in the face of their limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

The limited activity highlighted by the Ninth Circuit is precisely the type of activity reported by Plaintiff and relied upon by the ALJ in rejecting her subjective complains of impairment. Moreover, Plaintiff explained her ability to perform even these benign daily activities is limited. For example:

- Plaintiff admitted she is able to perform personal grooming activity, but explained it must be at her own pace and that she sometimes needs help. AR at 216.
- Plaintiff claimed she prepares simple meals, often consisting of sandwiches, frozen meals, or crock pot meals. Id. at 56-57, 217. She cooks only two to three times a week and sometimes needs help with this light cooking. Id. at 58, 216.
- Plaintiff stated she can do some light household chores. However, she clarified she can only do this housework when she feels up to it and that she requires breaks throughout the activity. Id. at 216-17, 229-30. Some days, Plaintiff is unable to perform even light household chores. Id. at 228.
- Plaintiff admitted she is able to drive a car, but claimed driving safely was difficult due to her lack of sleep from insomnia and reports driving only short distances. Id. at 215, 218, 229. According to Plaintiff, some days she drives her husband ten miles to work. Id. at 55. On the limited occasions when Plaintiff socializes with friends, she either meets them halfway so she can avoid driving too far or has friends pick her up. Id. at 219.
- Although Plaintiff stated she is able to go shopping, she does so just once a week on good days, needs help, and uses the electric shopping cart. Id. at 56, 216, 218, 228.
- Plaintiff reported spending some time with friends and family. Id. at 54, 56, 219. However, she explained she mostly "shie[s] away" from socializing,

11

maintains contact mostly by phone and text, and only occasionally has a meal with a friend. Id. She most often socializes with her husband, going to church only when she "feel[s] up to it," and to dinner and a movie when her pain is tolerable. Id. at 219.

In addition, despite Plaintiff's limited ability to perform these daily activities, she also testified she requires daily naps and has several days a week when she can only perform "a couple," and sometimes none, of the daily activities discussed above. Id. at 55-57, 59, 227, 229, 231-32.

Ultimately, Plaintiff's limited ability to perform some routine activities of daily living a few days each week do not translate to an ability to perform activities in a work setting. Fair, 885 F.2d at 603. Notably, the ALJ did not set forth any explanation as to how Plaintiff's daily activities involved skills that could be transferrable to the work setting. Additionally, Plaintiff's limited activities are not inconsistent with her reports of disabling symptoms. Thus, the ALJ's reliance on Plaintiff's daily activities is not a clear and convincing reason for rejecting Plaintiff's credibility. Vertigan, 260 F.3d at 1050; Reddick, 157 F.3d at 722.

**(2) Medical Treatment**

Next, the ALJ rejected Plaintiff's credibility because she "has not generally received the type of medical treatment one would expect for a totally disabled individual." Id. at 19[4]. While an ALJ may rely on a plaintiff's receipt of conservative treatment in rejecting a claimant's subjective complaint of pain, courts have routinely found that opioid treatment prescribed for pain symptoms caused by diseases like fibromyalgia is not considered conservative treatment. See, e.g., Krenz v. Colvin, 2014 WL 2889759, at *4 (C.D. Cal. June 25, 2014) (holding

---

[4] Although the ALJ reasons the level of Plaintiff's treatment was not indicative of a disabling condition, much of the ALJ's analysis is focused on the benign clinical findings. AR at 19-20. To the extent the ALJ relied on a lack of objective medical evidence to support Plaintiff's subjective complaints, this reason is discussed below.

12

ALJ's characterization of treatment for her fibromyalgia as "conservative" was not supported by substantial evidence where the claimant was taking a number of drugs including Trazodone and Tramadol); Miller v. Colvin, 2014 WL 1873276, at *2 (C.D. Cal. May 9, 2014) (same where claimant with fibromyalgia was prescribed a number of drugs including Tramadol, Vicodin, and Norco); Matamoros v. Colvin, 2014 WL 1682062, at *4 (C.D. Cal. April 28, 2014) (same where claimant with fibromyalgia was prescribed antidepressants and Vicodin, among other drugs); Sharpe v. Colvin, 2013 WL 6483069, at *8 (C.D. Cal. Dec. 10, 2013) (finding ALJ erred in rejecting claimant's credibility on the ground that the treatment purportedly was "only largely routine" where claimant was treated with a number of drugs, including Vicodin, Tramadol, Savella, and Ultram, for her fibromyalgia); Nunn v. Astrue, 2012 WL 442900, at *6 (D. Or. Feb. 9, 2012) (holding substantial evidence did not support ALJ's finding that fibromyalgia treatment was "conservative," where claimant was taking Tramadol and Ultram for her pain).

Here, the record shows Plaintiff received treatment for her fibromyalgia and chronic pain beyond that which courts deem "conservative" or "routine." For example, Plaintiff was routinely prescribed strong opioid pain medication, in addition to other prescription medication for the maintenance of her chronic pain and other symptoms. AR at 400, 424, 429, 432, 434, 437, 440, 442, 444, 448-49, 451-53, 458, 461, 466, 468, 474-76, 479, 543, 545, 565-71, 578-79, 584, 594, 600-01, 606, 642, 646-47, 654, 661, 665, 675, 682-83, 697, 705-07, 711-12, 715, 719, 721-22, 724, 902, 904-05, 920-22, 923-31, 933-34, 936-38, 940-58, 1035-36, 1044, 1064-65, 1166, 1168, 1170, 1172, 1174, 1176-77, 1179-80, 1182, 1187, 1189, 1193, 1195, 1199, 1201, 1202-03, 1205, 1208-09, 1211, 1214-15, 1218-19, 1260, 1263-64, 1266-67, 1269-70, 1272-73, 1275-76, 1278-79, 1281-82, 1284-85, 1286-87, 1289-90, 1292-93, 1295, 1298, 1304, 1307, 1310-11, 1313, 1316, 1318-18, 1321-22, 1324, 1326, 1328, 1332, 1335-37, 1366, 1384, 1394, 1396, 1398, 1399, 1401, 1403, 1405, 1406, 1414-15, 1417, 1419, 1444, 1445, 1447-50, 1452-53, 1455-56, 1457-59. Plaintiff also received

multiple injections and nerve blocks for pain.  Id. at 322-27, 330, 332-35, 400, 420-23, 427, 430, 433, 435, 438, 441, 443, 445-46, 450, 453-54, 456, 458-59, 462, 464, 467, 469, 471-72, 476, 593, 599, 605, 611, 920, 923, 926, 929, 933, 935-36, 938, 940, 942-43, 946-47, 951, 953-55, 957-58, 1020, 1237-41, 1244, 1246-53, 1302, 1313-14, 1316-19, 1321-22, 1324-30, 1334, 1332, 1337-38, 1340, 1343, 1348, 1390-94, 1443, 1445, 1447, 1449, 1451, 1453, 1455, 1459.  Finally, Plaintiff was prescribed physical therapy on multiple occasions for her impairments.  Id. at 593, 599, 605, 611, 920, 923, 926, 929, 933, 936, 940, 943, 947, 951, 955.  Thus, the ALJ's suggestion that Plaintiff's prescribed treatment was less aggressive than "one would expect for a totally disabled individual," is unsupported.

In addition, "the record does not reflect that more aggressive treatment options are appropriate or available" to alleviate Plaintiff's symptoms.  Lapeirre-Gutt v. Astrue, 382 Fed. App'x 662, 664 (9th Cir. 2010)[5].  "A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."  Id.  Hence, because the ALJ did not identify any more aggressive treatment options that were appropriate or available to Plaintiff, the ALJ's purported reliance on Plaintiff's level of medical treatment does not constitute a legitimate ground for rejecting Plaintiff's credibility.

Thus, because (1) Plaintiff received extensive, non-conservative treatment for her impairments, and (2) the record does not reflect more aggressive treatment options were appropriate or available, the ALJ's conclusion that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual" was an improper reason for rejecting Plaintiff's subjective complaints of impairment.

///

///

---

[5] The Court may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007.  U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

14

### (3) Objective Medical Evidence

Finally, the ALJ found Plaintiff's allegations are greater than would be "expected in light of the objective evidence of record." AR at 19. However, as discussed above, there is medical evidence documenting substantial attempts by doctors to treat Plaintiff's allegations of pain. See id. at 322-27, 330, 332-35, 400, 420-24, 429-35, 437-38 440-46, 448-53, 456, 458, 461-62, 464, 466-69, 474-76, 479, 543, 545, 565-71, 578-79, 584, 593, 599, 594, 600-01, 605, 606, 611, 642, 646-47, 654, 661, 665, 675, 682-83, 697, 705-07, 711-12, 715, 719, 721-22, 724, 902, 904-05, 920-22, 923-31, 933-38, 940-58, 1020, 1035-36, 1044, 1064-65, 1166, 1168, 1170, 1172, 1174, 1176-77, 1179-80, 1182, 1187, 1189, 1193, 1195, 1199, 1201, 1202-03, 1205, 1208-09, 1211, 1214-15, 1218-19, 1237-41, 1244, 1246-53, 1260, 1263-64, 1266-67, 1269-70, 1272-73, 1275-76, 1278-79, 1281-82, 1284-85, 1286-87, 1289-90, 1292-93, 1295, 1298, 1302, 1304, 1307, 1310-11, 1313-14 1316-19, 1321-22, 1324-30, 1332, 1335-38, 1340, 1343, 1348, 1366, 1384, 1390-94, 1396, 1398, 1399, 1401, 1403, 1405, 1406, 1414-15, 1417, 1419, 1443-44, 1445, 1447-51, 1453, 1455-56, 1457-59.

Further, even if the Court could find the record supports the ALJ's conclusion, a lack of objective medical evidence, alone, cannot support an ALJ's rejection of a plaintiff's subjective complaints of impairment. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (holding lack of objective medical evidence supporting claimant's symptoms and limitations cannot, by itself, support a credibility finding); Mendoza v. Berryhill, 2017 WL 2874622, at *1 (C.D. Cal. July 5, 2017) ("[T]he purported lack of objective medical evidence supporting Plaintiff's complaints cannot, by itself, support the credibility determination."). Hence, because the ALJ did not present any other sufficient reason for rejecting Plaintiff's subjective complaints of impairment, the alleged lack of objective medical evidence is not sufficient to support the ALJ's credibility determination.
///
///

# VIII.
# **RELIEF**

## A. APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (citation omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id. (citations omitted); see also Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998) ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

## B. ANALYSIS

In this case, the record has not been fully developed. The ALJ must provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective complaints of impairment. Accordingly, remand for further proceedings is appropriate.

///
///
///
///
///
///
///
///

## IX.
## **RECOMMENDATION**

For the foregoing reasons, it is recommended that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order.

Dated: August 31, 2017

HONORABLE KENLY KIYA KATO
United States Magistrate Judge